JAMES H. HOYT AND OTHERS *vs.* WILLIAM L. SMITH AND ANOTHER.

Where a written contract stipulated that the obligor should go to California, should furnish himself with all necessary tools for *digging gold*, and should *commence digging as soon as possible,* and *should forward to the obligees by every opportunity any amount which he might have on hand,* they to have *one-fourth of the amount which he could collect while there,* it was held that these stipulations bound the obligor to account with the obligees for such sums only as he obtained by *digging gold,* and not for any sums gained by him, while there, in any other business.

BILL in equity. The material facts of the case as reported by a committee, are as follows:

On the 22nd of January, 1849, William L. Smith, one of the respondents, executed and delivered to the petitioners and William Newman, the other respondent, the following agreement:

" This is to certify that I have received from Silas Scofield, Jr., and George Scofield, $500, from Stephen B. Provost, J. D. Warren, William Newman, John R. Scofield, and James H. Hoyt, $100 each, making in all 1,000. In consideration of the foregoing sum of $1,000, I will, on or about the first of February next, sail for California, by way of Chagres and Panama, in a steamship; and I will forward to California a sufficient quantity of provisions to last me two years, and will procure and forward all necessary tools for digging gold, and will commence digging as soon as possible after my arrival there, and forward, every opportunity, to the foregoing named persons any amount I may have on hand, they to receive one-fourth part of the amount that I can collect while there, and the remaining three-fourths to be kept by them for my use and subject to my order; \* \* \* \* (Signed) William L. Smith."

The following receipt was afterwards annexed to the foregoing contract by Smith:—

· " $200. Received, Stamford, January 29th, 1849, from each person named in the foregoing agreement, 20 per cent. on the amount received from each, making $200, on the

same terms and for the same purpose as specified in the foregoing agreement signed by me on the 22nd day of January, 1849 ; and if it should be that I have no occasion to make use of this sum of $200, then I am to return the same to each person named in the foregoing agreement in proportion to the sum paid by each.        William L. Smith."

The petitioners and Newman paid to Smith the sums specified in these agreements, amounting to $1,200. Smith thereupon procured the articles specified in the agreement, and shipped them to San Francisco, and soon afterwards went to California and commenced digging for gold in the mines. He continued digging at various places until about the 1st of November, 1849, and obtained thereby a considerable quantity of gold. During that time he occupied himself diligently and fairly under his agreement, but was not very successful, and became satisfied that he could not farther pursue the business of digging for gold with profit to himself or to the other parties to the agreement; and about the 1st of December, 1849, he abandoned the business, and went to San Francisco with the intention of there engaging in some other employment. At the time of his arrival there he had expended for necessary purposes, or lost without fault, all or nearly all the gold which he had previously obtained by digging. Early in January, 1850, he commenced the business of a lighterman in San Francisco, and continued in that business about a year, at the end of which time he left California and returned to Stamford. In his business of lighterman he made about $9,000, which sum he either sent home or brought home with him.

When he commenced his business of lighterman, and for a considerable time afterwards, he, as well as the petitioners, considered that the contract was still in force and that he was still acting under it, and that the avails of his labor and business were to be divided among the parties to the contract. About the time when he commenced this business he wrote to Hoyt, one of the petitioners, informing him of his change of occupation and of his reasons for making it,—

which reasons were made known to the other petitioners. Hoyt replied, assenting to the change.

Afterwards Smith, in the summer of 1850, sent a large amount of funds to Newman, the other respondent, being part of the avails of the lightering business,—the sending of which by Smith and the receipt thereof by Newman were designedly concealed by them both from the knowledge of the petitioners, with intent to prevent them from learning that Smith was successful in his new business and from claiming or obtaining from him any share of its profits. In the autumn of 1850, Smith paid to the petitioners the sum originally advanced to him by them, with interest to the time of the payment.

The petition alleged a conspiracy between Smith and Newman to defraud the petitioners, and prayed for a disclosure and an account. The case on the above facts was reserved for the advice of this court.

*Ferris* and *Minor*, for the petitioners.

By the terms of the contract, Smith was to go to California and remain two years in the employment of the petitioners. The expression " digging gold" as used in the contract does not mean literally the digging of gold from the earth, but was used by the parties as descriptive of, and applicable to, all sorts of employment in California. Other parts of the contract show that such is its true construction. Smith was to forward " any amount " he might " have on hand ;" the petitioners and Newman were to receive one-fourth " of the amount " that Smith could " collect while there ; " &c. If there be any ambiguity in the contract, that ambiguity is removed by the construction which the parties themselves have given to it.

*Hawley* and *Loomis*, for the respondents.

The contract is for gold-digging only. It contemplates no other business, and it is so declared upon by the petitioners. The petitioners set up no other contract, and the only claim they make is under that contract and by force of the same.

Upon the money obtained by Smith in the lightering business the petitioners have no claim under the contract. If they have sustained damage by his abandonment of the business of digging gold, their claim is for damages for his violation of the contract, be those damages more or less than the amount of Smith's gains in the lightering business. Smith has done more than he was bound to do, in refunding the money advanced to him with interest.

STORRS, C. J. If by the true construction of the agreement set out in this bill, the defendant Smith was required to labor in California, not generally for himself and the other parties to that agreement, but only in the particular business of digging gold, it is quite clear on the finding of the committee, nor has it been controverted, that on the settlement of the account between those parties in relation to that business, no balance is due from either of the defendants to the other parties to the agreement: because it is found by the committee that Smith seasonably went to the gold mines and commenced digging for gold, and that he worked diligently in that business for a period of more than six months, and until, as the report of the committee fairly imports, he could not further pursue the business with profit to himself or the other parties to the contract, when he discontinued the business and went to San Francisco with the intention of finding and engaging in some other business; before or upon his arrival at which last-mentioned place he had necessarily expended, or lost without fault on his part, the gold which he had obtained by digging. It appears also, from the report, that Smith has paid to the petitioners the sum originally advanced to him under the agreement, with interest thereon to the time of such payment; which amount, however, was obtained by him, not while occupied in the business of digging gold, but from that of lightering in which he subsequently engaged. And it is not found that in the business of lightering, or any other than that of digging gold, in which he engaged, he employed or used, either any of the monies originally advanced to him under the agreement, or those which had

been acquired by him in the business of digging gold; or, if that would have laid the foundation for an account on this bill, that it would have been practicable for him to continue in the latter business profitably to himself or the other parties to the agreement. Hence it appears that Smith has fully accounted to the plaintiffs for the sums originally advanced to him by the latter, and for the gold obtained by him while engaged in digging under the contract; and it is not shown that it was in his power to earn more in that particular business, or that he used any of the monies so advanced to him in any other occupation; and these embrace all the grounds on which the plaintiffs claim that, on the construction of the contract which has been supposed, the defendants are liable to account, either for the gold which was procured by digging, or for its avails in consequence of the subsequent use or disposition of it.

The plaintiffs however claim that, by the just construction of the agreement, Smith was bound to go to California, and remain there two years in the service of the plaintiffs and Newman generally, and in any kind of business which promised to be profitable to them, and not merely in the particular business of digging gold; and that, therefore, he is liable to account for the avails of the business of lightering in which he was engaged during a part of that time. In regard to this claim, it is quite clear that unless the agreement recited in this bill, on its face and independently of any extrinsic evidence to explain its meaning, should have the construction which the plaintiffs thus attach to it, they are not entitled to any relief in this case founded on such a construction; because the promise of Smith alleged and described in the bill is only that he would proceed to California and devote his time and services, during the two years he was to remain there, to the particular business of digging gold, and forward, as opportunity should present, to the plaintiffs and Newman, all the gold he should so procure and collect while there,—and there is no averment that he agreed to engage, or be accountable for what he should procure, in any other kind of business. Such being the contract alleged and

relied on throughout in the bill by the plaintiffs, it would clearly not be supported by, and consequently would not lay the foundation for any relief upon, the construction for which the plaintiffs now insist. And if it should be conceded that that is the true construction of its terms, it is, to say the least, very questionable whether in this case its meaning could be extended beyond that which properly attaches to it as set forth in the bill, and relief granted upon the ground of such an extended construction.

But the agreement recited in the bill is not, in our opinion, fairly susceptible of the meaning claimed for it by the plaintiffs. Such a construction of the phrase "digging gold," which is used in those instruments to designate the business in which Smith was to be employed, is not agreeable to the literal and proper meaning of that expression, or to the sense in which it is popularly or ordinarily used. It is true that it is susceptible of a figurative meaning, and is sometimes used in this manner to signify generally any mode by which wealth or property is obtained, of which a fine illustration is given by the great lyrical poet of England in his version of the thirty-ninth Psalm:

Some walk in honor's gaudy show,
Some dig for golden ore.

But it is quite uncommon for parties to contracts to couch them in figurative or poetical language, and we should hardly expect to find words used in such a sense rather than in their ordinary and proper meaning, to describe in a contract respecting the employment of one of them, the particular kind of business in which he was to serve. If, however, the phrase in question had acquired by common use such a figurative or peculiar meaning, it would perhaps be competent and proper for the court to give it such a signification, as was done in *Hoare* v. *Silverlock*, (12 A. & E. *N. S.*, 624,) where it was held that, in an action for defamation, the court might, especially after verdict, take the phrase "frozen snake" to imply, without explanation or innuendo, an imputation of treachery or ingratitude, on the ground that such a meaning

Hoyt *v.* Smith.

of the words had passed into common use.   But the expression we are now considering has not acquired in common parlance any other than its proper and literal meaning.   Nor is there any language connected with it in the instrument in question to show that it was used in any other than that sense.   On the contrary, the stipulation that Smith would procure and forward to California, a region then remarkable principally and indeed almost exclusively for its production of gold, all necessary tools for digging that metal, in connexion with what immediately follows, in the same sentence, and as an addition to it, that he would commence digging as soon as possible after his arrival there, places it beyond all doubt that the phrase in question was used in its literal and proper sense, and that he was to be confined to the business of procuring gold by digging alone ; and one of the phrases in the instrument, on which the plaintiffs rely to show that they were intended to be used in a looser, more extensive or figurative sense, rather strengthens than weakens the construction which we have adopted, while the other phrase relied on is entirely compatible with it and therefore does not aid the plaintiffs.

In regard to the conduct or declarations of the parties which have been alluded to as showing their understanding of the meaning of the contract, they might be proper for the consideration of the committee, whose province it was to find the facts in the case, in determining from the evidence before them, extrinsic of the instrument, what the parties intended by the language they used, provided the allegations in the bill rendered such evidence relevant ; but there is no finding on that subject, and it was for the superior court, as it is for us, only to decide the case on the facts found by the committee.

We therefore advise that the bill should be dismissed.

In this opinion the other judges concurred.

Bill to be dismissed.